IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

UNITED STATES OF AMERICA,            )
                                     )
      Plaintiff,                     )
                                     )
v.                                   )      No. 2:13-cr-20139-JPM
                                     )
FRED MASTERS, JR.,                   )
                                     )
      Defendant.                     )
                                     )

_____

**ORDER ADOPTING IN PART THE REPORT AND ADOPTING THE
RECOMMENDATION: ORDER DENYING MOTION TO SUPPRESS**

_____

Before the Court is the Report and Recommendation of

Magistrate Judge DIANE K. VESCOVO (the "Report and

Recommendation"), filed September 23, 2013 (ECF No. 32),

recommending that the Court deny Defendant Fred Masters, Jr.'s

("Defendant") Motion to Suppress Evidence, filed July 17, 2013

(ECF No. 19).  On September 26, 2013, Defendant filed his

Objections to the Report and Recommendation.  (ECF No. 34.)  For

the following reasons, the Court ADOPTS IN PART the Magistrate

Judge's Report, ADOPTS the Recommendation, and DENIES

Defendant's Motion to Suppress.

I.   **BACKGROUND**

In a three-count Indictment filed April 16, 2013, Defendant

was charged with one count of "unlawfully, knowingly[,] and

intentionally manufactur[ing] a mixture and substance containing a detectable amount of methamphetamine," in violation of 21 U.S.C. § 841(a)(1); one count of using or maintaining a place "for the purpose of manufacturing, distributing, or using any controlled substance, more specifically methamphetamine," in violation of 21 U.S.C. § 856; and one count of unlawful possession of "equipment, chemicals, products, and materials which may be used to manufacture methamphetamine" with reasonable cause to believe that said items would be to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 843(a)(6). (ECF No. 1 at 1-2.) On May 23, 2013, Defendant pled not guilty to all charges. (ECF No. 11.)

The facts in this case are largely undisputed, and the circumstances surrounding Defendant's arrest are set forth in the Magistrate Judge's Report and Recommendation. (See Report and Recommendation at 2-5, ECF No. 32.)

On July 17, 2013, Defendant filed a Motion to Suppress evidence collected during an allegedly illegal search. (ECF No. 19.) On July 18, 2013, an Order was entered referring the Motion to the Magistrate Judge. (ECF No. 20.) On August 13, 2013, the Government filed a Motion for an extension of time to file its response to Defendant's pending Motion to Suppress. (ECF No. 24.) On August 14, 2013, the Court entered an Order granting the Government's Motion. (ECF No. 25.) On August 16,

2013, the Government responded in opposition to the Motion to Suppress, asserting that Defendant's Motion (ECF No. 19) is not well-taken and should be denied.  (Gov't's Resp. at 1, ECF No. 27.)

On September 23, 2013, the Magistrate Judge recommended that the Motion to Suppress be denied.  (Report and Recommendation, ECF No. 32.)  On September 24, 2013, the Government timely filed its Response to the Magistrate Judge's Report and Recommendation, indicating that the government had no objections to the Report and Recommendation.  (ECF No. 33.)

On September 26, 2013, Defendant timely filed Objections to the Magistrate Judge's Report and Recommendation.  (ECF No. 34.) In his Objections, Defendant asserts that (1) "there was no probable cause for issuance of the search warrant based upon the affidavit submitted" (id. at PageID 85), (2) there was no nexus established between the residence and the evidence sought (id. at PageID 85, 87), (3) "the warrant was invalid on staleness grounds" (id. at PageID 90) and (4) the good-faith exception under United States v. Leon, 468 U.S. 897, 926 (1986), does not apply (id. at PageID 90, 93).

On November 4, 2013, the Government filed its Response[1] to Defendant's Objections.  (ECF No. 41.)  Namely, the Government

---

[1] Rule 59 of the Federal Rules of Criminal Procedure does not contemplate filing a response in opposition to a party's objections.  Compare Fed. R. (cont.)

argues that (1) "the affidavit in this case established sufficient . . . probable cause to support the issuance of the search warrant" (id. at PageID 125), (2) "the facts in the affidavit established the requisite nexus between the items sought and the Defendant's residence" (id. at PageID 126), (3) "the search warrant was not stale" (id. at PageID 131), and (4) "the good faith exception, as articulated in United States v. Leon, 468 U.S. 897 (1984), applies" (id.).

## II. LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 59, "[a] district judge may refer to a magistrate judge for recommendation a defendant's . . . motion to suppress evidence." Fed. R. Crim. P. 59(b)(1). Within fourteen days after being served with a copy of the report and recommendation on a motion to suppress, "a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Crim. P. 59(b)(2). "A judge of the court shall make a de novo determination of those portions of the report or specified

---

(cont.)
Civ. P. 72(b)(2) ("A party may respond to another party's objections within 14 days after being served with a copy [of the written objections].") with Fed. R. Crim. P. 59. This district's Local Criminal Rules also do not explicitly consider the possibility of filing a response to a party's objections to a magistrate judge's report and recommendation. See Local Criminal Rules at 38-41, United States District Court for the Western District Of Tennessee, https://www.tnwd.uscourts.gov/pdf/content /LocalRules.pdf. The Local Criminal Rules, however, do indicate that responses to motions shall been within "fourteen (14) days after the motion was received." LCrR 12.1(c). Though objections to report and recommendations are not themselves motions, the Court will consider the timeframe for motion responses as a guideline in this instance.

proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b); see also Fed. R. Crim. P. 59(b)(3).

A court need not review any aspect of a report and recommendation to which no specific objection is made. See Thomas v. Arn, 474 U.S. 140, 149-50 (1985); see also United States v. Chalmers, No. 09-CR-20325-STA, 2011 WL 6338833, at *2 (W.D. Tenn. Dec. 19, 2011) (stating that the court may "adopt the findings and rulings of the magistrate judge to which no specific objection is filed"). The court, however, "need not provide de novo review where objections to a report and recommendation are frivolous, conclusive, or general." United States v. Manning, No. 3:13-CR-012, 2013 WL 3820022, at *1 (E.D. Tenn. July 24, 2013) (citing Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986)). "After reviewing the evidence, the Court is free to accept, reject, or modify the proposed findings or recommendations of the Magistrate Judge." United States v. Akins, No. 08-cr-20397-JPM, 2011 WL 2636697, at *1 (W.D. Tenn. July 6, 2011) (citing Fed. R. Crim. P. 59(b)(3)).

## III. ANALYSIS

In the instant case, the Magistrate Judge recommended that Defendant's Motion to Suppress be denied. (ECF No. 32.) In doing so, the Magistrate Judge made the following proposed conclusions of law: (1) "the aggregation of facts in the affidavit support a finding of probable cause" (id. at 11);

(2) "the the affidavit established the required nexus between the items sought — the methamphetamine-related materials — and the defendant's residence" (id. at 12); (3) there was a "sufficient basis for finding that the nature of the crime, and not the passage of time, supported a finding of probable cause to issue a warrant" (id. at 14); and (4) "even if the warrant were defective, the reliance of the officers on the warrant fits within the United States v. Leon good—faith exception" (id. at 17).

Defendant makes objections to the Report and Recommendation as to all conclusions of law. These objections are related to "whether the affidavit on which the search warrant was based provided probable cause for the issuance of the warrant." (Report and Recommendation at 5, ECF No. 32.)

The Defendant, however, fails to make objections as to the Magistrate Judge's proposed findings of fact. (See ECF No. 34.) Accordingly, the Court ADOPTS the findings and conclusions of the Magistrate Judge to which no specific objection has been filed. See Chalmers, 2011 WL 6338833, at *2. The Court reviews de novo the four proposed conclusions of law to which Defendant objects.

## A. Probable Cause

Defendant objects to the Magistrate Judge's proposed conclusion of law that "found probable cause for issuance of the

warrant, based upon an aggregation of the facts contained within the affidavit."  (Def.'s Objections at PageID 81, ECF No. 34.) According to Defendant, the Magistrate Judge's determination that probable cause existed was based on these findings: "(1) Ms. Hebert purchased 43.68 grams of pseudoephedrine pills in a one year period in two counties; (2) Investigator [Brett] Chunn, who submitted the affidavit in support of the warrant, was experienced in investigating methamphetamine labs; and (3) Ms. Hebert and Mr. Masters had been previously arrested for methamphetamine possession."  (Id. at PageID 82.)

The Government opposes Defendant's objections and asserts that (1) "the purchases [of pseudoephedrine pills] are probative"; (2) "[t]his highly probative fact is strengthened by Investigator Chunn's training and experience"; and (3) Defendant's criminal record showing prior arrests for methamphetamine is relevant to the probable cause inquiry. (Gov't's Resp. at PageID 123-24, ECF No. 41.)

The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  "To find probable cause, a judge issuing a search warrant must have a substantial basis for thinking that there is a fair probability that evidence of a crime would be found at

the premises." United States v. Rose, 714 F.3d 362, 366 (6th Cir. 2013) cert. denied, No. 13-5332, 2013 WL 3735908 (Oct. 7, 2013) (citing United States v. Williams, 544 F.3d 683, 685–86 (6th Cir. 2008)). "This conclusion depends on the totality of the circumstances." United States v. Frazier, 423 F.3d 526, 531 (6th Cir. 2005) (citing Illinois v. Gates, 462 U.S. 213, 230 (1983)). The probable cause standard is a "practical, non-technical conception" that deals with the "factual and practical considerations of everyday life." Id. (quoting Illinois v. Gates, 462 U.S. at 231).

"When making a probable cause determination, a court is limited to the four corners of the affidavit." Rose, 714 F.3d at 366 (citing Frazier, 423 F.3d at 531). "The affidavit must contain particularized facts demonstrating 'a fair probability that evidence of a crime will be located on the premises of the proposed search.'" United States v. McPhearson, 469 F.3d 518, 524 (6th Cir. 2006) (quoting Frazier, 423 F.3d at 531). "The appropriate analysis . . . is 'the adequacy of what [the affidavit] does contain, not on what it lacks, or on what a critic might say should have been added.'" United States v. Dyer, 580 F.3d 386, 391 (6th Cir. 2009) (quoting United States v. Allen, 211 F.3d 970, 975 (6th Cir. 2000) (en banc)). Courts should not "engage in line-by-line scrutiny of the warrant application's affidavit." Williams, 544 F.3d at 686. Courts

may also "afford 'considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found and [the courts are] entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the crime and type of offense.'" Id. (alteration in original) (quoting United States v. Bethal, 245 F. App'x 460, 465 (6th Cir. 2007)). Further, a magistrate judge's determination of probable cause is given "great deference." Id. at 685 (citing United States v. Combs, 369 F.3d 925, 937 (6th Cir. 2004)).

### 1. Purchase of Pseudoephedrine Pills

In support of Defendant's objections, Defendant argues that Ms. Hebert's purchase of "43.68 grams [of pseudoephedrine pills] over a year's time" is a "legal amount under state law."[2] (Def.'s Objections at PageID 82, ECF No. 34.)  Defendant further contends that "there is a temporal connection problem" because the "exact date of the purchases is unknown."  (Id.)

The Government asserts that "Hebert's substantial legal purchases of pseudoephedrine in the preceding year and her pattern of purchases as being 'highly probative of the existence of probable cause.'"  (Gov't's Resp. at PageID 123, ECF No. 41.)

---

[2] "A person shall not purchase products containing more than three and six tenths (3.6) grams per day, or more than nine (9) grams per thirty-day period, of ephedrine or pseudoephedrine base, or their salts, isomers or salts of isomers."  Tenn. Code Ann. § 39-17-431(c)(2).

The Government also argues the Magistrate Judge correctly noted that "the relevant inquiry is whether there is a fair probability that contraband will be found in a particular place." (Id.; see also Gov't's Resp. to Mot. to Suppress at 7, ECF No. 27 ("The standard is not whether the affidavit establishes a violation of the law but whether it establishes that 'there is a fair probability that contraband will be found in a particular place.'" (quoting Williams, 544 F.3d at 686)).)

In the instant case, the Magistrate Judge found that "[t]he substantial amount of Hebert's purchases of pseudoephedrine in the preceding year and her pattern of purchases are factors that are highly probative of the existence of probable cause." (Report and Recommendation at 9, ECF No. 32.) After reviewing the record, the Court agrees with the Magistrate Judge's conclusion that the purchase of 43.68 grams of pseudoephedrine and the pattern of purchases in two counties demonstrates "a fair probability that evidence of a crime would be found." See Rose, 714 F.3d at 366.

According to the affidavit itself, the amount and pattern of pseudoephedrine purchases was one of the reasons for believing that there was probable cause. (Aff. at 1, ECF No. 27-1.) Through the Tennessee Methamphetamine Task Force website database, Investigator Chunn identified Ms. Hebert as having purchased "[]43.68 grams of pseudoephedrine pills from 2

different counties, including Shelby County, TN and Tipton County[,] TN" from March 12, 2011 to March 3, 2012.  (Id.) Investigator Chunn affirmed that the purchase of pseudoephedrine pills "from at least 2 different counties to include different pharmacies in Shelby County, TN, and Tipton County, TN" is a "consistent practice[] of a [sic] methamphetamine cooks and/or smurfers[ ](persons that shop for materials used to manufacture methamphetamine)."  (Id.)  Based on a "practical, non-technical conception" of probable cause that deals with the "factual and practical considerations of everyday life," the Court finds that the substantial amount and scattered pattern of purchases of pseudoephedrine pills are probative of the existence of probable cause.  See Frazier, 423 F.3d at 531 (citing Illinois, 462 U.S. at 231).

### 2.    Training and Experience of Affiant

Defendant's objection to the Magistrate Judge's determination that probable cause existed rests on Defendant's assertion that although "a court can consider an officer's training and experience as part of the probable cause analysis," there must be "another evidentiary nexus to support probable cause."  (Def.'s Objections at PageID 83, ECF No. 34 (citing United States v. Schultz, 14 F.3d 1093, 1097 (6th Cir. 1994).) In support of this argument, Defendant relies on United States v. Schultz, 14 F.3d 1093, 1097 (6th Cir. 1994), for the

proposition that Investigator Chunn had "little more than a
hunch" that methamphetamine or evidence of a crime would be
found in the residence based on Investigator Chunn's use of the
Tennessee Methamphetamine Task Force's web site.  (Id. at PageID
84.)  Specifically, Defendant analogizes Investigator Chunn's
"perusal of the Tennessee Methamphetamine Task Force's web site"
to "the officer who simply performed a credit check in Schultz."
(Id.)  Defendant, therefore, argues that no evidentiary nexus
exists that "t[ies] a year's worth of pseudoephedrine purchases
to illegal activity, much less to the residence."  (Id.)

    The Government agrees that a court can consider an
officer's training and experience and that there must be an
"evidentiary nexus prior to the search, between the items to be
searched and any criminal activity."  (Gov't's Resp. at
PageID 124, ECF No. 41 (citing Schultz, 14 F.3d at 1097).)  The
Government, however, contends that "[s]ince people likely hide
the fruits and instrumentalities in their home," it was
reasonable to rely on Investigator Chunn's experience and
training to infer that methamphetamine components would be found
in Ms. Hebert's home, where Defendant also resided.  (Id.)

    As discussed in Schultz, "While an officer's 'training and
experience' may be considered in determining probable cause, it
cannot substitute for the lack of evidentiary nexus in this

case, prior to the search" between the thing or place searched and any criminal activity.  14 F.3d at 1097 (citation omitted).

In the instant case, the Magistrate Judge found that the evidentiary nexus to support probable cause was present in this case.  (Report and Recommendation at 10, ECF No. 32.)  After reviewing the record, the Court agrees with the Magistrate Judge's conclusion there was an evidentiary nexus to support probable cause.  The Court has already found that the substantial amount and scattered pattern of purchases of pseudoephedrine pills are probative of the existence of probable cause.  Moreover, the Court finds United States v. Williams, 544 F.3d 683 (6th Cir. 2008), instructive in holding "an issuing judge may infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking."  544 F.3d at 687.  Accordingly, the Court concludes that a nexus exists between the purchases of pseudoephedrine pills and possible illegal activity that may be found in Defendant and Ms. Hebert's home.

The Court next considers Investigator Chunn's training and experience.  Investigator Chunn has been a law enforcement officer since 2005 and graduated from the Tennessee Law Enforcement Training Academy in 2006.  (Aff. at 1, ECF No. 27-1.)  In his affidavit, Investigator Chunn described his training and experience in detecting methamphetamine labs:

> I am currently assigned to the Criminal Investigations
> Division as a Narcotics Investigator in Tipton County,
> Tennessee. . . . I am also skilled in the recognition
> of Interstate Drug Interdiction. I have also assisted
> in conducting undercover drug operations including
> utilizing informants, interviewing and preparing
> documents for court. I have also attended and
> graduated from Basic Clandestine Methamphetamine Lab
> School. Basic Clandestine Methamphetamine Lab School
> trained me in the specialized aspect of
> Methamphetamine "labs" including being certified to
> enter and dismantle "labs". I have been trained in
> detecting possible "labs" including the precursors,
> chemicals and other components needed to manufacture
> Methamphetamine[.]

(Id.)

Investigator Chunn has eight years' of service in the
Tipton County Sheriff's Office and has substantial training in
the recognition of interstate drug interdiction, conducting
undercover drug operations, and detecting possible
methamphetamine "labs." (Id.) The Court finds that
Investigator Chunn's experience and training can be relied upon
to support a finding of probable cause that methamphetamine or
its components would be found in Ms. Hebert's home.

Defendant's reliance on Schultz is unavailing because
Schultz is distinguishable from the instant case. In Schultz,
the court found that the warrant to search the defendant's safe
deposit box lacked probable cause. The investigating officer
"had not made any material connection between the bank and any
criminal activity," and bank employees had not reported any
illegal activities. 14 F.3d at 1097. The only connection that

the investigating officer made was based on his belief "that it is not uncommon for the records, etc., of such [drug] distribution to be maintained in bank safe deposit boxes." Id. (alteration in original). The Schultz court found that the officer's "'training and experience' were not sufficient to establish a nexus of probable cause between [the] crime and the safe deposit boxes" because the officer "did not have anything more than a guess that contraband or evidence of a crime would be found in the boxes." Id. at 1097-98.

In contrast, Investigator Chunn has specific training in detecting clandestine methamphetamine labs, including the precursors, chemicals, and other components needed to manufacture methamphetamine. Moreover, while Investigator Chunn used the methamphetamine database to identify suspicious purchases, this case is unlike the investigating officer who used a credit check to learn of the safe deposit boxes. As the Schultz court cautioned, allowing probable cause to be based on any property owned, rented, or otherwise used by a criminal suspect would "invite general warrants authorizing searches of . . . the type of broad warrant the Fourth Amendment was designed to foreclose." Id. at 1098. In contrast, the methamphetamine database is used to identify suspicious purchases. Further, unlike with safe deposit boxes, there is a presumption that a "judge may infer that drug traffickers use

their homes to store drugs and otherwise further their drug trafficking." See Williams, 544 F.3d at 687. Therefore, Defendant's reliance on Schultz is inapposite.

Accordingly, the Court finds that Investigator Chunn's experience and training can be relied upon to support a finding of probable cause that methamphetamine or its components would be found in Ms. Hebert's home.

### 3. Previous Arrests of Defendant and Ms. Hebert

Lastly, Defendant objects to the Magistrate Judge's determination that "a court can consider a defendant's record of prior drug activity in determining probable cause" for search and seizure. (Def.'s Objections at PageID 84, ECF No. 34 (citing Report and Recommendation at 10, ECF No. 32).) The Magistrate Judge relies on United States v. $67,220 in U.S. Currency, 957 F.2d 280, 286 (6th Cir. 1992), in support of this proposition. Defendant argues, however, that $67,220 states "a defendant's record of drug activity is a . . . probative factor [only] in the forfeiture calculus." (Id.)

In its Response, the Government cites to United States v. Wagers, 452 F.3d 534 (6th Cir. 2006), in support of the proposition that a court can consider a defendant's prior criminal record. In particular, "[t]he application of this test is not fettered by the presumption of innocence embodied in the test for conviction. Instead, a 'person of reasonable caution'

would take into account predilections revealed by past crimes or convictions as part of the inquiry into probable cause." (Gov't's Resp. at PageID 124 (quoting Wagers, 452 F.3d at 541) (internal quotation marks omitted).)

A court may consider a defendant's prior criminal record in determining probable cause. "Although a defendant's criminal history is not dispositive, it is relevant to the probable cause inquiry." United States v. Dyer, 580 F.3d 386, 392 (6th Cir. 2009) (citations omitted). In the instant case, the Magistrate Judge cites to $67,220 in U.S. Currency, 957 F.2d at 286, in support of this proposition. The Court declines to adopt this analysis. The Court, however, adopts the Magistrate Judge's recommendation based on Dyer.

The Court agrees with Defendant's contention that $67,220 holds "[a] claimant's record of drug activity is a highly probative factor in the forfeiture calculus." 957 F.2d at 286 (emphasis added). In $67,220, the issue before the court was whether probable cause existed to support the seizure of currency in a civil forfeiture action. In a forfeiture action, "the government 'must establish probable cause to believe that a substantial connection exists between the property to be forfeited and the illegal exchange of a controlled substance." $67,220.00, 957 F.2d at 283 (quoting United States v. 526 Liscum Drive, 866 F.2d 213, 216 (6th Cir. 1989)) (emphases added).

Probable cause to seize property[3] should not be conflated
with probable cause to forfeit property because the
"determinations involve different queries, [and] they also may
involve different evidence." United States v. One 1974 Learjet
24D, Serial No. 24D-290, Mexican Registration XA-RMF, 191 F.3d
668, 673 (6th Cir. 1999). "[E]ven when the initial seizure is
found to be illegal, the seized property can still be
forfeited." Id. (quoting United States v. Daccarett, 6 F.3d 37,
46 (2d Cir. 1993)); accord United States v. Ford, 64 F. App'x
976, 982 (6th Cir. 2003). Furthermore, for probable cause to
forfeit property, "a district court must assess probable cause
at the time of the forfeiture hearing," not at the time of the
seizure. $67,220.00, 957 F.2d at 284. In contrast, to find
probable cause in the instant case "a judge issuing a search
warrant must have a substantial basis for thinking that there is
a fair probability that evidence of a crime would be found at
the premises." Rose, 714 F.3d at 366.

The Court, nevertheless, adopts the Magistrate Judge's
recommendation that a court can consider a defendant's prior
criminal record in determining probable cause. See Dyer, 580

---

[3] The standard to establish probable cause to search a person or a place and
to seize evidence there are the same. See United States v. McLevain, 310
F.3d 434, 438 (6th Cir. 2002) ("The Fourth Amendment of the United States
Constitution protects citizens from unreasonable searches and seizures.
Generally, a warrant based on information establishing probable cause is
required to search a person or a place and to seize evidence found there.");
see also United States v. McCormick, 502 F.2d 281, 285 (9th Cir. 1974)
("[T]he Fourth Amendment applies equally to searches and to seizures.")

F.3d at 392.  In the instant case, the affidavit states the
following:

> Sharon Hebert has been arrested for Felony Possession
> of Schedule II (Meth) with Intent and Felony
> Possession of Schedule II. Fred Masters, JR who is
> Sharon Hebert husband, also resides at the residence
> and has also been arrested for Initiation of
> Methamphetamine, Felony Possession of Schedule II
> (Meth) with Intent.

(Aff. at 2.)

Both Ms. Hebert and Defendant have previous arrests for

felony possession of methamphetamine, and Defendant has been

arrested for initiation of methamphetamine.[4]  The affidavit also

sets forth that both Ms. Hebert and Defendant have been arrested

for felony possession of methamphetamine "with Intent."  (Id.)

Although the affiant fails to indicate whether this is

possession with intent to distribute methamphetamine or with

intent to manufacture methamphetamine,[5] based on a "practical,

non-technical conception" of probable cause that deals with the

"factual and practical considerations of everyday life," the

Court finds that the affidavit as a whole suggests one or both

interpretations.  See Frazier, 423 F.3d at 531 (citing Illinois

---

[4] "It is an offense for a person to knowingly initiate a process intended to
result in the manufacture of any amount of methamphetamine."  Tenn. Code Ann.
§ 39-17-435(a).

[5] "It is an offense for a defendant to knowingly: (1) Manufacture a controlled
substance; (2) Deliver a controlled substance; (3) Sell a controlled
substance; or (4) Possess a controlled substance with intent to manufacture,
deliver or sell the controlled substance."  Tenn. Code Ann. § 39-17-
417(a)(1)-(4) (emphasis added); see also id. § 39-17-417(c), (i)(10),
(j)(10).

v. Gates, 462 U.S. at 230).  Either interpretation alone
supports a finding of probable cause because each suggests an
element of drug trafficking.

### 4.    Totality of the Circumstances

Based on the totality of the circumstances, within the four
corners of the affidavit, the Court finds that the affidavit to
the search warrant supported probable cause based on: (1) the
amount and pattern of pseudoephedrine pill purchases, (2) the
Investigator Chunn's training and experience in detecting
methamphetamine labs, and (3) Defendant's and Ms. Hebert's prior
arrests for felony possession of methamphetamine with intent.
After reviewing the record, the Court REJECTS in part the Report
but ADOPTS the Recommendation.  Accordingly, Defendant's
Objection as to probable cause is OVERRULED.

### B.    Nexus

Defendant objects to the Magistrate Judge's determination
that the affidavit sets forth a substantial basis for concluding
that there was a nexus between "the place to be searched and the
evidence sought."  (Def.'s Objections at PageID 85, ECF No. 34
(citing United States v. Ronnie Buffer, No. 12-5052, 2013 WL
3185585 (6th Cir. June 24, 2013).)  Defendant asserts that cases
that establish a nexus between the suspected criminal activity
and the suspect's residence are cases in which "the search
warrants' affidavits contained an additional fact that permitted

the magistrate to draw the inference that evidence of wrongdoing would be found in the defendants' homes." (Def.'s Objections at at PageID 86, ECF No. 34.)

Defendant further argues that the Government did not produce evidence tying alleged criminal activity to Defendant's home. (Id.) Defendant asserts that the information provided by the Government "did not independently corroborate the fact that the defendants were known drug dealers <u>at the time the police sought to search their home</u>." (Id.) Defendant contends that the date of those arrests and their location were relevant but were not disclosed in the affidavit. (Id.)

The Government argues that the Magistrate Judge's conclusion was correct and that "the facts in the affidavit established the requisite nexus between the items sought and the Defendant's residence." (Gov't's Resp. at PageID 126, ECF No. 41.) In support, the Government relies on <u>United States v. Williams</u>, which held that a "magistrate may infer a nexus between a suspect and his residence, depending upon the type of crime being investigated, the nature of things to be seized, the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places." (Def.'s Objections at PageID 85-86, ECF No. 34 (quoting <u>Williams</u>, 544 F.3d at 687 (internal citations and quotation marks omitted)).)

To support a finding of probable cause, a court must find "a nexus between the place to be searched and the evidence sought." Rose, 714 F.3d at 366 (citing United States v. Brooks, 594 F.3d 488, 492 (6th Cir. 2010)). "In order to establish a sufficient nexus, there must be reasonable cause to believe that the items sought are located on the property to which the affiant seeks entry." Id. (citation omitted). The belief "that the items sought will be found at the location to be searched must be 'supported by less than prima facie proof but more than mere suspicion.'" Williams, 544 F.3d at 686 (6th Cir. 2008) (quoting Bethal, 245 F. App'x. at 464).

"A magistrate may infer a nexus between a suspect and his residence, depending upon 'the type of crime being investigated, the nature of things to be seized, the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places.'" Id. at 687 (quoting United States v. Savoca, 761 F.2d 292, 298 (6th Cir. 1985)). The United States Court of Appeals for the Sixth Circuit has stated that "[i]n a recent line of cases, we have held that an issuing judge may infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking." Id. To make this inference, however, search warrant affidavits must contain "an additional fact that permit[s] the magistrate to draw the inference that evidence of wrongdoing would be found in

the defendants' homes - namely, the independently corroborated fact that the defendants were known drug dealers at the time the police sought to search their homes." Id. at 688.

In the instant case, the Magistrate Judge found that the affidavit "sets forth a substantial basis for concluding that a search of the residence at 4530 Pickens Store Road would reveal evidence of methamphetamine, components of a methamphetamine lab, and receipts or documents relating to the purchase of pseudoephedrine." (Report and Recommendation at 11-12, ECF No. 32.) The Magistrate Judge relied on Williams that "an issuing judge may infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking." (Report and Recommendation at 11, ECF No. 32 (quoting Williams 544 F.3d at 687).)

After reviewing the record, the Court agrees with the Magistrate Judge's conclusion that the affidavit was sufficient establishing "a nexus between the place to be searched and the evidence sought." See Rose, 714 F.3d at 366. Even without knowing the exact dates of the purchases, the amount of pseudoephedrine pills and pattern of purchase over the span of one year and the prior arrests for criminal methamphetamine possession suggest "more than mere suspicion" that methamphetamine, components of methamphetamine production, or

both would be found at the location to be searched.  See Williams, 544 F.3d at 686.

As for the type of crime being investigated, the manufacture of methamphetamine can take place in the home.  The nature of methamphetamine manufacture is that small quantities can be produced in "low-yield, one pot method of manufacture . . . to very advanced, high-yield labs mass producing methamphetamine.  (Def.'s Objections at PageID 88, ECF No. 34.) Pseudoephedrine pills and components of methamphetamine manufacturing can be accumulated over time and have a long shelf life.  While there may be an opportunity to conceal the evidence elsewhere, the normal inferences suggest that local manufacturers of methamphetamine may be likely to hide the fruits and instrumentalities in their homes.  See Williams, 544 F.3d at 687 (quoting Savoca, 761 F.2d at 298).  The affidavit identified Ms. Hebert as purchasing "a very large amount of pseudoephedrine pills"; that both Ms. Hebert and Defendant reside at the residence identified as the single family dwelling located at 4530 Pickens Store Road, Mason, TN 38049; and that both Ms. Hebert and Defendant have been arrested for methamphetamine-related charges.  Accordingly, the Magistrate Judge correctly inferred that methamphetamine, components of methamphetamine production, or both would be found at Ms. Hebert's residence, where Defendant also resided.

Defendant asserted that the Government "did not independently corroborate the fact that the defendants were known drug dealers at the time the police sought to search their home." (Def's Objections at PageID 86, ECF No. 34.) The facts of this case are like the facts in Williams. As in Williams, Defendant attempts to argue that an issuing judge may infer a nexus between a suspect and his residence only when the suspect is a suspected drug trafficker. (Id.; see also Williams, 544 F.3d at 687.) In Williams, the Sixth Circuit noted that defendant "attempt[ed] to stretch our holding [in United States v. McPhearson, 469 F.3d 518 (5th Cir. 2006)] too far by arguing that unless the suspect is a drug dealer, an issuing judge may not issue a search warrant that lacks evidence linking a suspect's criminal activity to his residence." 544 F.3d at 688.

The Sixth Circuit in Williams then noted that the warrant affidavit set forth sufficient facts between the handguns and the residence. Id. The warrant application named two informants, and police records indicated that defendant had been arrested for carrying a concealed firearm. Id. Similarly, the warrant affidavit in the instant case sets forth sufficient facts between the components of methamphetamine manufacture and the residence. The warrant affidavit identified a substantial amount of pseudoephedrine purchased, stated that both Ms. Hebert and Defendant have been previously arrested on methamphetamine-

related offenses, and indicated that they lived in the same residence.

This case is unlike <u>United States v. McPhearson</u>, 469 F.3d 518 (6th Cir. 2006).  In <u>McPhearson</u>, the defendant was arrested on a simple assault warrant outside of his residence and was found to have crack cocaine on his person.  <u>Id.</u> at 520. McPhearson was not arrested on a drug-related warrant, and there was no other evidence that the defendant had been involved in drug-trafficking.  <u>Id.</u>  When police officers asked McPhearson for permission to search his house, McPhearson refused consent. <u>Id.</u> at 520-21.  The lower court found that the affidavit failed to provide "any indication that drugs or drug paraphernalia were inside the house or that the officer had any reason to believe that they were inside the house."  <u>Id.</u> at 522.  Had the affidavit been "based on this officer's experience in drug law enforcement," however, there may have been probable cause because "drug dealers often keep drug paraphernalia in their home."  <u>Id.</u>  The Sixth Circuit affirmed the district court.

In contrast, while the <u>McPhearson</u> affidavit failed to show that the officers had training or experience in drug law enforcement, the affidavit in the instant case affirmed Investigator Chunn's training and experience in detecting methamphetamine labs.  Further, while McPhearson was not a known drug dealer and his prior convictions were for property crimes,

Defendant in the instant case has prior arrests for initiation of methamphetamine and possession of methamphetamine. Therefore, the affidavit in this case supports an inference that Defendant was involved in the production and trafficking of methamphetamine.

Accordingly, the Court ADOPTS the Magistrate Judge's Report and Recommendation as to this issue and OVERRULES Defendant's Objection.

### C. Staleness

Defendant objects to the Magistrate Judge's conclusion on staleness and relies on United States v. Hython for the proposition that "facts that at one time supported probable cause can over time become stale where they are not 'so closely related to the time of the [search] as to justify a finding of probable cause at that time.'" (Def.'s Objections at PageID 87, ECF No. 34 (quoting United States v. Hython, 443 F.3d 480, 485 (6th Cir. 2006).)

The Government asserts that "whether information in an affidavit is stale does not depend upon an arbitrary time limitation but is tied to the nature of the crime, the criminal, the location of the search, and the items sought." (Gov't's Resp. at PageID 128, ECF No. 41 (citing United States v. Spikes, 158 F.3d 913, 923-24 (6th Cir. 1998)).)

"[S]tale information cannot be used in a probable cause

determination." United States v. Frechette, 583 F.3d 374, 377-

78 (6th Cir. 2009) (citing Spikes, 158 F.3d at 923). In

analyzing whether information is stale, courts consider the

following factors:

> (1) the character of the crime (chance encounter in
> the night or regenerating conspiracy?),
> (2) the criminal (nomadic or entrenched?),
> (3) the thing to be seized (perishable and easily
> transferrable or of enduring utility to its holder?),
> and
> (4) the place to be searched (mere criminal forum of
> convenience or secure operational base?).

Frechette, 583 F.3d at 378 (citing United States v. Abboud, 438

F.3d 554, 572–73 (6th Cir. 2006)).

In evaluating staleness in the instant case, the Magistrate

Judge concluded that "[t]he crime at issue in this case —

possession of methamphetamine or components of a methamphetamine

lab — is of an ongoing, regenerating nature," which obviates an

argument for staleness. (Report and Recommendation at 13, ECF

No. 32.) The Magistrate also found that "recurring purchases of

a substantial amount over the course of a year still gives rise

to a fair probability that Hebert and [Defendant] could cook

methamphetamine or had the components necessary to do so in

their possession at the time the search warrant was issued."

(Id.) Further, the Magistrate Judge found that "it is

reasonable to infer that Hebert and Masters may have had to

accumulate the components necessary to cook methamphetamine, i.e., pseudoephedrine over a period of time." (Id. at 13-14.) In addition, the Magistrate Judge determined that "the residence at 4530 Pickens Store Road, described as a single family dwelling where both [Ms.] Hebert and Masters reside," was more "akin to the 'secure operational base' described in Spikes." (Id. at 14.) In sum, the Magistrate Judge concluded that there was a fair probability that evidence of wrongdoing – "pseudoephedrine and other components of methamphetamine" – may be found at the residence. (Id. at 14.)

After reviewing the record, the Court agrees with the Magistrate Judge's conclusion that the affidavit supports a finding of probable cause and is not based on stale information. First, the character of the crime is of a regenerating and ongoing nature. Defendant and Ms. Hebert had been arrested in the past for felony possession of methamphetamine, suggesting that their involvement in methamphetamine manufacture was not merely an isolated instance. Ms. Hebert's amount and pattern of purchase over a one-year period supports an inference that Ms. Hebert and Defendant were accumulating methamphetamine components or may have been producing low-yield methamphetamine production over that one-year period. Second, the locus of methamphetamine production was the residence, where Defendant resided. Third, unlike perishable ingredients, pseudoephedrine

pills have a long shelf life and enduring utility.  Finally, the residence of Ms. Hebert and Defendant provided the stable operational base in which to produce methamphetamine.

The instant case is unlike Hython.  The Hython court found that the sale of drugs out of a residence was not inherently ongoing.  443 F.3d at 485.  As noted by the court, a continuum exists "ranging from an individual who effectuates the occasional sale from his or her personal holdings of drugs to known acquaintances, to an organized group operating an established and notorious drug den."  Id.  The court found that the affidavit in this case did not establish the residence as a "secure operational base for an ongoing drug enterprise."  Id. at 486.  The single transaction of one modified controlled buy was not supported by any further police investigation.  Id. "More importantly, the affidavit offer[ed] no clue as to when this single controlled buy took place."  Id.  Because the affidavit was devoid of any temporal reference, the court found that the warrant was invalid on staleness grounds.  Id. at 486-87.

In contrast, the affidavit in the instant case does state a temporal reference, namely that "Since 03/21/2011 to this date [March 3, 2012]," Ms. Hebert had purchased several grams of pseudoephedrine pills.  (Aff. at 1 ¶ 5.)  Accordingly, this Objection is OVERRULED.

**D.    Good-Faith Exception**

Defendant objects to the Magistrate Judge's finding that "even if there was an insufficient basis for probable cause established in the affidavit to justify issuance of the warrant, the case would fall under the good faith exception established in United States v. Leon, 468 U.S. 897, 926 (1986)."  (Def.'s Objections at PageID 90-91, ECF No. 34 (discussing Magistrate Judge's proposed conclusion of law).)  Defendant argues that "[t]his case was 'based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'"  (Id. at PageID 91 (quoting Leon, 468 U.S. at 922).)  Defendant contends that the affidavit failed to establish a nexus between the illegal activity and the place to be searched.  (Id. at PageID 92.)  In support, Defendant cites to United States v. McPhearson, 469 F.3d 518 (6th Cir. 2006). (Id. at PageID 93.)

In response, the Government argues that Defendant's "argument is without merit because the affidavit presented ample evidence of probable cause, and thus it was 'not entirely unreasonable' for the officers to reply on the search warrant the chancellor issued in this case."  (Gov't's Resp. at PageID 131, ECF No. 41.)  The Government asserts that "exclusion of evidence is 'our last resort.'"  (Id. at PageID 132 (citing Herring v. United States, 555 U.S. 135 (2009)).)  The Government

distinguishes United States v. McPhearson by noting the present of additional facts, other than the amount of pseudoephedrine purchased by Ms. Herbert:

> For example, Investigator Chunn's reliance on his years of experience and training as a narcotics investigator and the knowledge he had acquired of methamphetamine manufacturer's modus operandi — like going to other counties to buy methamphetamine — is, standing alone, a fact that satisfies the minimal nexus. See United States v. Schultz, 14 F.3d 1093, 1098 (6th Cir. 1994). Additionally, Investigator Chunn knew both the defendant and Hebert have prior convictions for manufacturing methamphetamine; that is, the police knew the defendant to have participated previously in the type of criminal activity that the police were investigating. This is enough to meet the minimal nexus requirement and merits the application of Leon, as well. See[,] e.g., United States v. Frazier, 423 F.3d 518 (6th Cir. 2005).

(Id.)

"The Leon good-faith exception applies when a warrant issued by a neutral and detached magistrate is discovered, after the search, to have been nonetheless invalid — and, hence, the search unlawful — yet 'the officer conducting the search acted in objectively reasonable reliance on [that] warrant.'" United States v. Hodson, 543 F.3d 286, 292 (6th Cir. 2008) (quoting Massachusetts v. Sheppard, 468 U.S. 981, 987–88 (1984)) Suppression, however, remains appropriate if:

> (1) the magistrate [judge] was 'misled by information in the affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth';

(2) the magistrate [judge] 'abandoned his judicial role' or neutrality;

(3) the warrant was 'so lacking in indicia of probable cause' as to render official belief in its existence unreasonable; or

(4) the warrant was so 'facially deficient' that it could not reasonably be presumed valid.

Id. (quoting United States v. McClain, 444 F.3d 556, 564–65 (6th Cir. 2005))

In the instant case, the Magistrate Judge found that Defendant failed to meet his burden of proving the chancellor abandoned her judicial role. The Magistrate Judge found no evidence of a false affidavit and no evidence of bad faith or bias. Further, the Magistrate Judge found that the warrant was not so lacking in indicia of probable cause nor that it was entirely unreasonable for officers to rely on the search warrant.

After reviewing the record, the Court agrees with the Magistrate Judge's conclusion that even if there was not a sufficient basis for probable cause in the affidavit, the case would fall under the good-faith exception, as articulated in Leon. Defendant's argument relies on the third exception in Leon that suppression remains an appropriate remedy if "a warrant based on an affidavit [is] 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" See Leon, 468 U.S. at 923.

As discussed, the Court finds that the affidavit has established a nexus between the purchases of pseudoephedrine pills and the residence sufficient to support a finding of probable cause because of (1) Investigator Chunn's experience and training in detecting methamphetamine labs, (2) Defendant's and Ms. Hebert's previous methampethamine-related arrests,[6] and (3) prior Sixth Circuit precedent holding that "drug traffickers use their homes to store drugs and otherwise further their drug trafficking." See Williams, 544 F.3d at 687.

Accordingly, this Objection is OVERRULED.

## IV. CONCLUSION

In summary, having reviewed de novo the legal conclusions to which Defendant objects, the Court ADOPTS IN PART the Magistrate Judge's conclusions of law.

Accordingly, the Court finds that the affidavit supported a finding of probable cause, and, even if the affidavit did not, the warrant would have fallen under the exception discussed in Leon. Defendant's objections to the Magistrate Judge's recommendation that Defendant's Motion to Suppress be denied are OVERRULED.

---

[6] Although the Government argues that Defendant and Ms. Hebert "have prior convictions for manufacturing methamphetamine" (Gov't's Resp. at PageID 132, ECF No. 41), the affidavit itself only discusses arrests, not convictions. (See Aff., ECF No. 27-1.)

For the foregoing reasons, the Court ADOPTS the Magistrate Judge's factual findings, ADOPTS IN PART the Magistrate Judge's conclusions of law, and DENIES Defendant's Motion to Suppress. The search warrant was properly supported by the affidavit in establishing probable cause.

**IT IS SO ORDERED**, this 4th day of December, 2013.

/s/ Jon P. McCalla
JON P. McCALLA
U.S. DISTRICT JUDGE